# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CHARLES COLSTON, | Case No. 1:15-cv-01750-SKO |
| Plaintiff, | **ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | **(Doc. 1)** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

On November 18, 2015, Plaintiff Michael Charles Colston ("Plaintiff") filed a complaint under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits and supplemental security income. (Doc. 1.) The matter is currently before the Court on only Plaintiff's opening brief―as the Commissioner failed to file an opposition brief[1]―which was submitted without oral argument.[2]

---

[1] By its order entered on December 2, 2016, the Court granted Defendant's first request for an extension and ordered that Defendant could file their responsive brief by no later than January 20, 2017. (Doc. 21 at 3.) On February 23, 2017―over one month after the deadline for Defendant's responsive brief―the parties filed a stipulation in which they request leave for Defendant to file their opposition by March 27, 2017 (the "Request"). (Doc. 22 at 2.) The stated bases for this Request are that defense counsel "has a very heavy workload" and is taking a vacation "from Monday, February 27 through Friday, March 17, 2017." (*Id.* at 1.)

The Court finds that this untimely request for an extension lacks merit. Defendant was free to timely request an extension prior to the current deadline of January 20, 2017, regardless of the volume of defense counsel's workload. The Court will not now grant a second extension where Defendant waited for over one month after this deadline to seek such relief.

Accordingly, the Court DENIES the Request. (Doc. 22.)

For the reasons provided herein, the Court REVERSES the final decision of the Commissioner and REMANDS this matter for further proceedings.

## I.   BACKGROUND

The following includes the pertinent medical and procedural background for this matter. Plaintiff was born on January 23, 1968, and is currently 59 years old. (Administrative Record ("AR") 182.) Plaintiff has a tenth-grade education and worked in the construction and maintenance industries between 1998 and 2012. (AR 228.)

Plaintiff saw Dr. Chester A. Cunnington regarding his impairments on an "as needed" basis between 2002 and 2011. (*See* AR 729–34.) Dr. Cunnington did not provide treatment to Plaintiff between November 2011 and September 2014. (*See* AR 734.) Nonetheless, Plaintiff saw a specialist, Dr. Stephen C. Lee, during this time period. (*See* AR 735–36.) Dr. Cunnington referred Plaintiff to this specialist for a neurological consultation. (*See, e.g.*, AR 735.) Following this gap in treatment with Dr. Cunnington, Plaintiff again saw Dr. Cunnington for treatment on four occasions between September and December 2014. (*See* AR 728, 733–34.)

In a Chronic Pain Residual Functional Capacity Questionnaire dated March 26, 2015, Dr. Cunnington opined that Plaintiff (1) experiences pain and other symptoms that would frequently interfere with his attention and concentration; (2) is incapable of "even 'low stress' jobs;" (3) can walk "less than ½ block" without rest or severe pain; (4) can sit for twenty minutes at a time "before needing to get up, etc.;" (5) can stand for twenty minutes at a time "before needing to sit down, walk around, etc.;" (6) can "sit" and "stand/walk" for "less than 2 hours" in "an 8-hour working day;" (7) will need to "frequently" take "unscheduled breaks during an 8-hour working day;" and (8) can never "lift and carry" ten, twenty, or fifty pounds "in a competitive work situation." (AR 730–31.) Attached to Dr. Cunnington's opinion are treatment notes for Plaintiff's visits with this physician between January 2010 and December 2014. (*See* AR 728, 733–34.)

On May 10, 2013, Plaintiff filed his claims for disability insurance benefits and supplemental security income. (AR 182–87, 190–92.) In these claims, Plaintiff alleges that he became disabled on August 6, 2012. (AR 182 & 190.) Plaintiff stated that the following

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6 & 8.)

conditions limit his ability to work: carpal tunnel in both hands, a pinched nerve at C6 and C7, spurs in his left ankle, a spur removed from his left foot, and diabetes. (AR 227.)

The Social Security Administration denied Plaintiff's claims initially on October 17, 2013, (AR 121–25), and again on reconsideration on April 29, 2014, (AR 127–32). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on June 4, 2014. (AR 133.)

On April 14, 2015, the ALJ held a hearing regarding Plaintiff's claims. (AR 34–74.) Plaintiff was not represented by counsel at this hearing. (*See* AR 37–42.)

Following the hearing, the ALJ found that Plaintiff was not disabled in a decision dated June 16, 2015. (AR 9–29.) In the decision, the ALJ conducted the five-step sequential evaluation analysis set forth in 20 C.F.R. § 404.1520. (*See* AR 13–23.) At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since August 6, 2012, the alleged onset date." (AR 14.) At step two, the ALJ found that Plaintiff "has the following severe impairments: left shoulder derangement, degenerative disc disease, and Parkinson's." (AR 14.) At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." (AR 14.)

The ALJ next found that Plaintiff has the residual functional capacity ("RFC") "to perform light work as defined in 20 [C.F.R.] 404.1567(b) and 416.967(b) except he can never climb ladders, ropes, and scaffolds, frequently reach overhead with the left arm, finger, and grasp, and occasionally climb ramps or stairs." (AR 15.) In the course of the RFC analysis, the ALJ stated the following regarding the opinion of Dr. Cunnington:

> On March 26, 2015, Chester Cunnington, M.D., filled out a Chronic Pain Residual Functional Capacity Questionnaire. He had treated [Plaintiff] since 2002 on an as needed basis. He opined [Plaintiff's] symptoms would frequently interfere with the attention and concentration needed to do even simple work tasks, could not tolerate low stress jobs, could walk less than ½ a block without rest or severe pain . . . , could sit less than 2 hours and stand/walk less than 2 hours in an 8-hour workday, needed unscheduled breaks frequently, needed a cane, could never lift and carry even less than 10 pounds . . . , and suffered weakness in the hands, fingers, and/or arms . . . . The undersigned gives Dr. Cunnington's opinion reduced weight. He had not treated [Plaintiff] for 3 years between November 2011 and September 2014 . . . and based his opinion solely [on Plaintiff's] allegations and account of his prior

3

>treatment and testing during 3 appointments, 1 each in September, October, and December . . . . Finally, [Plaintiff] often denied pain in some or all the areas in which he allegedly had functional limitations . . . , ambulated with normal gain [sic] . . . , and repeatedly had no findings in the neck or back and denied pain, weakness, and numbness on examination . . . .

(AR 21.)

At step four, the ALJ determined that Plaintiff "is unable to perform any past relevant work." (AR 22.) Finally, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 22.) Ultimately, the ALJ determined that Plaintiff "is not disabled under sections 216(i) and 223(d) of the Social Security Act." (AR 23.)

Plaintiff sought review of the ALJ's decision before the Appeals Council. (AR 5–6.) On September 24, 2015, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (AR 1–4.)

Plaintiff then filed the Complaint in this Court on November 18, 2015. (Doc. 1.) Plaintiff filed his opening brief on October 20, 2016. (Doc. 19.) By its order entered on December 2, 2016, the Court ordered that Defendant could file a responsive brief by January 20, 2017, and Plaintiff could file a reply brief by February 6, 2017. (Doc. 21 at 3.) To date, Defendant has not filed a responsive brief and Plaintiff has not filed a reply brief. As such, the briefing in this case is complete and this matter is ready for disposition.

## II.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility [for disability benefits], the Commissioner" is required to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* § 423(d)(2)(B). For purposes of this determination, "a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, App. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 404.1520(a)(4) (providing the "five-step sequential evaluation process"); *id.* § 416.920(a)(4) (same). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial

gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of disability insurance benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### III.  DISCUSSION

Plaintiff argues, in relevant part, that the ALJ erred during the RFC analysis when determining the weight to accord to the opinion of Plaintiff's treating physician, Dr. Cunnington. (*See* Doc. 19 at 24–26.)  For the reasons that follow, the Court agrees with Plaintiff's position.

**A.   Overview of Analysis**

The ALJ determines a claimant's RFC before step four of the sequential evaluation analysis. *See, e.g.*, 20 C.F.R. §§ 404.1520(e) & 416.920(e).  A claimant's RFC "is the most [the claimant] can still do despite [their] limitations." *Id.* §§ 404.1545(a)(1) & 416.945(a)(1).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record . . . ." *Robbins*, 466 F.3d at 883.  "The ALJ is entitled to formulate an RFC and resolve any ambiguity or inconsistency in the medical evidence . . . ." *Jenkins v. Colvin*, Case No. 1:15-cv-01135-SKO, 2016 WL 4126707, at *6 (E.D. Cal. Aug. 2, 2016) (citing *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001)).  Additionally, "[t]he ALJ can . . . decide what weight to give to what evidence as long as the ALJ's reasoning is free of legal error and is based on substantial evidence." *Tremayne v. Astrue*, No. CIV 08–2795 EFB, 2010 WL 1266850, at *12 (E.D. Cal. Mar. 29, 2010) (citing *Reddick v. Chater*, 157 F.3d 715 (9th Cir. 1998)).

"In disability benefits cases such as this, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability―the claimant's ability to perform work." *Reddick*, 157 F.3d at 725. Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining [or reviewing] physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)).  The opinions of treating physicians "are given greater weight than the

opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

In this case, Plaintiff alleges—and the record reflects—that Dr. Cunnington was Plaintiff's treating physician. (*See, e.g.*, Doc. 19 at 24.) "If . . . a treating [physician's] opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record, [the Commissioner] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2); *cf. Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record." (citation omitted)). "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn*, 495 F.3d at 632 (quoting 20 C.F.R. § 404.1527(d)(2)).

"If a treating physician's opinion is not given 'controlling weight' because it is not 'well-supported' or because it is inconsistent with other substantial evidence in the record, the [Commissioner] considers specified factors in determining the weight it will be given." *Id.* at 631. These factors include (1) the "[l]ength of the treatment relationship and the frequency of examination;" (2) the "[n]ature and extent of the treatment relationship;" (3) the "[s]upportability" of the opinion;" (4) the "[c]onsistency" of the opinion "with the record as a whole;" (5) whether the opinion is from "a specialist about medical issues related to his or her area of specialty;" and (6) "any other factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion." 20 C.F.R. § 404.1527(c)(2)–(6).

Further, "[e]ven if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record." *Reddick*, 157 F.3d at 725 (quoting *Lester*, 81 F.3d at 830). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)); *see, e.g.*, *Chaudhry v. Astrue*, 688 F.3d 661, 671

(9th Cir. 2012) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009))); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995))); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (noting that "inconsistencies and ambiguities" in a treating physician's opinion "represent specific and legitimate reasons for" rejecting the opinion). "The ALJ must do more than offer his conclusions." *Reddick*, 157 F.3d at 725. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Finally, "[e]ven when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'" *Orn*, 495 F.3d at 632–33 (quoting SSR 96–2p). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Id.* (quoting SSR 96–2p).

**B.   Analysis Regarding Plaintiff's Treating Physician**

In this case, the ALJ provided the following rationale for according "Dr. Cunnington's opinion reduced weight": (1) "[h]e had not treated [Plaintiff] for 3 years between November 2011 and September 2014," (2) Dr. Cunnington "based his opinion solely [on Plaintiff's] allegations and account of his prior treatment and testing during 3 appointments, 1 each in September, October, and December," and (3) medical evidence contradicted Dr. Cunnington's opinion. (AR 21.) Plaintiff argues that these bases do not constitute the requisite "specific and legitimate reasons" to accord Dr. Cunnington's opinion reduced weight and reach a disability determination that is contrary to this treating source's opinion. (*See, e.g.*, Doc. 19 at 24–26.) The Court agrees.

The ALJ's first rationale—the three-year gap in treatment—is not sufficient to accord Dr. Cunnington's opinion reduced weight. Dr. Cunnington treated Plaintiff on an "as needed" basis

between 2002 and 2011, (*see, e.g.*, AR 514), and then on numerous additional occasions in 2014, (*see* AR 728, 733–34). As such, this physician had a lengthy treatment relationship with Plaintiff. Additionally, while Dr. Cunnington did not treat Plaintiff between November 2011 and September 2014, he nonetheless recommended that Plaintiff see the specialist who treated Plaintiff during this gap and then reviewed the specialist's findings and recommendations. (*See, e.g.*, AR 735–36.) Based on Plaintiff's extensive treatment history with Dr. Cunnington, this treating physician's opinion should have been accorded deference regardless of this gap in treatment. *See, e.g.*, *Durham v. Colvin*, Case No. CV 15-00567-RAO, 2015 WL 9305627, at *5 (C.D. Cal. Dec. 21, 2015) (noting that, while "the regulations permit an ALJ to consider the length and frequency of the treatment relationship," this is only "one . . . factor" and "is not alone a specific and legitimate reason to give [a treating physician's] opinions less weight"); *Gottuso v. Colvin*, No. SACV 12–01705–MAN, 2014 WL 1286221, at *8 (C.D. Cal. Mar. 28, 2014) (noting that the ALJ was required to give deference to the treating physician who had treated the plaintiff "regularly" prior to a gap in treatment).

Furthermore, the record reflects that Dr. Cunnington treated Plaintiff *four* times between this gap in treatment and when Dr. Cunnington provided his opinion. (*See* AR 728, 733–34.) This number of treatments following the gap in the treatment relationship demonstrates that the gap was irrelevant in the determination of whether Dr. Cunnington's opinion was due deference. *See, e.g.*, *Ghokassian v. Shalala*, 41 F.3d 1300, 1303 (9th Cir. 1994) (finding that a physician was a treating source and their opinion as due deference where they "saw [the plaintiff] twice within a 14-month period preceding the hearing" and the physician was "the doctor with the most extensive contact with [the plaintiff]"). The Court therefore finds that Plaintiff's gap in treatment with Dr. Cunnington was not a specific and legitimate reason to discount this treating physician's opinion.

The ALJ's second rationale―that Dr. Cunnington based his opinion on Plaintiff's allegations, as well as the number of recent examinations―similarly lacks legitimacy. On the first point, the ALJ's assertion that Dr. Cunnington based his opinion on Plaintiff's allegations is not supported by the record. Specifically, Dr. Cunnington's stated opinion references his extensive

treatment of Plaintiff and *not* solely Plaintiff's assertions. (*See* AR 728–34.) Consequently, this stated rationale is not legitimate.

As to the second point, Dr. Cunnington treated Plaintiff four times in the six-month period before Dr. Cunnington provided his opinion. (*See* AR 728, 733–34.) This is a sufficient number of separate treatment occasions to warrant deference to this treating source's opinion.[3] *See, e.g.*, *Ghokassian*, 41 F.3d at 1303 (finding that a treating source's opinion was due deference where they saw the plaintiff "twice within a 14-month period preceding the hearing"); *cf. Villa v. Colvin*, No. 2:15-cv-112-EFB (TEMP), 2016 WL 1128275, at *6 (E.D. Cal. Mar. 22, 2016) ("[E]ven if [the treating physician] were not [the] plaintiff's treating physician and instead were an examining physician who had seen [the] plaintiff on only one occasion, the ALJ would still have . . . to provide specific and legitimate reasons supported by substantial evidence to reject [the treating physician's] opinion." (citing *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014))). As such, the number of recent occasions when Dr. Cunnington treated Plaintiff is not a legitimate basis to discount Dr. Cunnington's opinion.

Finally, the ALJ's last rationale―conflicting medical evidence―is similarly not a legitimate basis for discounting Dr. Cunnington's opinion. The ALJ noted the following regarding evidence that conflicted with Dr. Cunnington's opinion: (1) Plaintiff "often denied pain in some or all the areas in which he allegedly had functional limitations;" (2) Plaintiff "ambulated with normal gain [sic];" and (3) Plaintiff "repeatedly had no findings in the neck or back and denied pain, weakness, and numbness on examination." (AR 21.) However, in noting this evidence, the ALJ ignored contrary evidence that supported Dr. Cunnington's opinion, including that Plaintiff (1) experienced pain in the areas where he allegedly had functional limitations, (*see, e.g.*, AR 396 (constituting an emergency department report dated December 24, 2013, which states that Plaintiff was "[u]nable to stand due to pain in the low back and left leg"); AR 420 (providing January 27, 2014 notes by a physician's assistant, which state that Plaintiff "presents to the UCSF Spine

---

[3] Furthermore, this statement from the ALJ regarding the number of recent treatments with Dr. Cunnington ignores the extensive treatment history Plaintiff shared with Dr. Cunnington―a factor that weighs in favor of according this opinion additional weight. *See, e.g.*, 20 C.F.R. § 1527(c)(2)(i) ("Generally, the longer a treating source has treated [a claimant] and the more times [a claimant] ha[s] been seen by a treating source, the more weight [the ALJ] will give to the source's medical opinion.").

Center with complaints of back pain and left leg pain with left knee pain"); AR 441 (constituting progress notes from Mark Twain Medical Center dated September 22, 2014, which state that that Plaintiff had "back pain"); (2) did not ambulate with a normal gait, (*see, e.g.*, AR 404 (providing December 26, 2013 clinic notes from Adventist Health that state Plaintiff "ambulate[d] with a limp"); AR 404 (constituting January 27, 2014 notes from "UCSF Medical Center," which state that Plaintiff had an "[a]ntalgic"[4] gait); AR 692 (providing June 13, 2014 clinic notes from Adventist Health that state Plaintiff was "able to ambulate with some difficulty" and had an "antalgic gait"); and (3) presented with medical findings pertaining to his neck or back, (*see, e.g.*, AR 422 (constituting January 27, 2014 clinic notes from "UCSF Medical Center," which state that sensation at Plaintiff's L3 was "absent"); AR 614 (providing a December 10, 2014 statement from Plaintiff's specialist, Dr. Lee, in which this physician states that Plaintiff exhibited "moderate limitation of neck extension and rotation to the left because of pain").

As numerous courts have noted, an ALJ may not consider evidence that only supports the non-disability determination, while disregarding evidence that supports the contradictory opinion from a physician. *See, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (finding that "the ALJ's specific reason for rejecting [a physician's] medical opinion [was] not supported by substantial evidence" because, in part, "the ALJ selectively relied on some entries in [the plaintiff's] records . . . and ignored the many others that indicated continued, severe impairment"); *see also Crawford v. Colvin*, No. ED CV 15-1436-PLA, 2016 WL 1237342, at *5 (C.D. Cal. Mar. 28, 2016) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination." (citation omitted)). *See generally Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the [ALJ] to . . . weigh conflicting evidence, he cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result." (citations omitted)). As the ALJ impermissibly selected evidence that was contrary to Dr. Cunnington's opinion, the Court finds that the ALJ's

---

[4] "Antalgic means a posture or a gait assumed to lessen pain." *Soria v. Colvin*, No. 1:12–cv–00424–SKO, 2013 WL 1820088, at *4 n.6 (E.D. Cal. Apr. 30, 2013) (citing *Dorland's Illustrated Medical Dictionary* 98 (31st ed. 2007)).

citation to medical evidence is not a specific and legitimate reason to discount the opinion of this treating physician.

In summary, the Court finds that the ALJ did not give any specific and legitimate reasons for according reduced weight to the opinion of Plaintiff's treating physician, Dr. Cunnington. The Court therefore finds that substantial evidence does not support the ALJ's determination regarding the weight to accord to the opinion of this treating physician. *See, e.g.*, *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008) (finding that the Commissioner's "decision was not supported by substantial evidence" because the ALJ failed to give adequate reasons for rejecting opinions from physicians). The Court now turns to whether this deficiency in the ALJ's opinion was harmless.

**C.     Harmless Error Analysis**

The Court must next address whether the ALJ's analysis pertaining to Dr. Cunnington's opinion was harmless error. *See, e.g.*, *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (holding that the "harmless error analysis applies . . . to assess the impact of the ALJ's failure to even mention [a treating physician] or [his] notes, let alone its failure to give specific and legitimate reasons that are supported by substantial evidence for rejecting a treating source's medical opinion" (citation omitted)). The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless "'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity'" (quoting *Alaska Dep't of Envtl. Conservation. v. EPA*, 540 U.S. 461, 497 (2004))). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the]

application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.'" *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

In this case, the ALJ's erroneous analysis pertaining to Dr. Cunnington was not harmless. Dr. Cunnington opined that Plaintiff's impairments would severely limit his ability to work, including that Plaintiff's pain and other symptoms would frequently interfere with his attention and concentration, he is incapable of low-stress jobs, he can walk less than a half block without rest or severe pain, he can only sit or stand for twenty minutes at a time, he can only sit, stand, or walk for less than two hours in an eight-hour workday, he will need to frequently take unscheduled breaks, and he can never carry even ten pounds "in a competitive work situation." (AR 730–31.) However, the ALJ found that Plaintiff had an RFC to perform light work, with some limitations. (AR 15.) This finding is irreconcilable with Dr. Cunnington's opinion. *Compare* 20 C.F.R. § 404.1567(b) (stating that "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls"), *with* (AR 730–31 (providing Dr. Cunnington's opinion).) As such, if the ALJ credited Dr. Cunnington's opinion, the ALJ's RFC determination—and likely the outcome of the decision—would be different. The Court therefore finds that the ALJ's error was not harmless, *see, e.g.*, *Molina*, 674 F.3d at 1115 (noting that an error is harmless "where it is inconsequential to the ultimate nondisability determination" (citations omitted)), and remand[5] is warranted.[6]

---

[5] In his briefing, Plaintiff argues that "further administrative proceedings would not be useful" and, instead, the Court should credit the opinions of Plaintiff's treating physicians as true and order the payment of benefits. (Doc. 19 at 31–32; *see also id.* at 34 (arguing that the Court should credit lay testimony as true).) The Court disagrees and finds that an order for payment of benefits is inappropriate.

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether

14

# IV.   CONCLUSION

For the foregoing reasons, the Court REVERSES the final decision of the Commissioner and REMANDS this matter for further proceedings.

IT IS SO ORDERED.

Dated:   **February 28, 2017**                              /s/ *Sheila K. Oberto*                     
                                                            UNITED STATES MAGISTRATE JUDGE

---

to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted).  As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted).  Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion." *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (citation omitted).

Here, the Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable because *additional administrative proceedings will be useful*.  In particular, the ALJ's RFC determination conflicted with the opinion evidence of Dr. Cunnington—as well as other testimony in the record.  Additional administrative proceedings will be useful to accord an opportunity to the ALJ to resolve this conflict.  *Cf. Lule v. Berryhill*, Case No.: 1:15-cv-01631-JLT, 2017 WL 541096, at *6 (E.D. Cal. Feb. 10, 2017) ("When there is conflicting medical evidence, 'it is the ALJ's role to determine credibility and to resolve the conflict.'" (quoting *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984))).

Accordingly, the Court declines Plaintiff's request to order payment of benefits.  Instead, the Court shall remand this matter for further proceedings.

[6] As the Court finds that reversal and remand are warranted based on the ALJ's analysis pertaining to Dr. Cunnington's opinion, it does not reach Plaintiff's additional arguments regarding other medical evidence, lay testimony, and the ALJ's step-two analysis. (*See* Doc. 19 at 21–24, 26–34); *cf. Willmett ex rel. A.P. v. Astrue*, No. 2:10–cv–01201 KJN, 2011 WL 3816284, at *1 (E.D. Cal. Aug. 25, 2011) ("Because this legal error warrants remanding this matter for further proceedings, the undersigned does not reach the remainder of [the] plaintiff's arguments seeking reversal of the ALJ's and Appeals Council's decisions.").